## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

JEAN WINGARD, on behalf of      :
herself and all others similarly situated,  :
                        :    Case No.  NO.: 2:20-cv 00030-CRE
           Plaintiff,     :    Class Action
                        :
v.                       :    **Jury Trial Demanded**
                       :
SELECTION MANAGEMENT   :
SYSTEMS, INC., d/b/a SELECTION.COM :
and XPEDITE WHOLESALE CRIMINAL  :
RESEARCH;  and VERICHECK, INC.   :
                       :
          Defendants.   :

## SECOND AMENDED CLASS ACTION COMPLAINT

COMES NOW the Plaintiff, Jean Wingard ("Plaintiff"), by counsel, and as for her Complaint against Defendants, Selection Management Systems, Inc., d/b/a Selection.com and Xpedite Wholesale Criminal Research (collectively, "Selection"); and Vericheck, she states as follows:

## <u>PRELIMINARY STATEMENT</u>

1.      This is an action for statutory, actual, and punitive damages, costs, and attorney fees brought pursuant to 15 U.S.C. §§ 1681a–x (the Fair Credit Reporting Act or "FCRA").

2.      Plaintiff is a victim of the Selection's substandard data matching procedures and is what has commonly become known as a "mixed file" victim.

3.      Plaintiff's potential landlord ordered a consumer report from Defendant Vericheck to use in evaluating Plaintiff's application for low-income housing. Vericheck in turn ordered a report about Plaintiff from Selection.

4.      In the report Selection issued to Vericheck, Selection falsely reported that Plaintiff was a thief and had jumped bail. None of this was true.

5.    Selection had apparently mixed the information of a stranger with that of the Plaintiff, and reported those inaccurate records to Vericheck and subsequently Plaintiff's potential landlord.

6.    Because of Vericheck's mistake, Plaintiff and her husband missed out on housing for which they had waited two years to apply.

7.    Selection and Vericheck are bound by the FCRA to use reasonable procedures to assure the maximum possible accuracy of the information they report. Defendants fail on this fundamental requirement of the FCRA because, as in Plaintiff's case, Defendants do not account for even basic, easily identifiable differences in name or date of birth between the information in records and the individuals about whom they are reporting.

8.    Even more, Selection did not have a legal right to provide a consumer report about Plaintiff to Vericheck in the first place.  Selection knowingly disguises a segment of its business, known as Xpedite Wholesale Criminal History, as a non-consumer reporting agency business that is not governed by the FCRA. In fact, however, Selection's operation of its Xpedite business constitutes merely an extension of its own consumer reporting business that is governed by the FCRA.

9.    Obtaining and using consumer reports is presumptively illegal. To overcome that restriction, the user of a consumer report must certify to the agency from which it seeks a report the purpose to which the reports it seeks will be put. Without such certification, a consumer reporting agency is forbidden from issuing reports.

10.    Because Selection provides consumer reports as governed by the FCRA through its Xpedite business, Selection is required to limit the disclosure of those reports to the permissible purposes authorized by the FCRA in 15 U.S.C. § 1681e(a) and to obtain a certification from its

users certifying the purposes for which the information was being sought, and certifying that the information will be used for no other purpose as required by 15 U.S.C. § 1681e(a). Selection, via Xpedite, however never obtains this certification from its users, and therefore, has no reason to believe the reports are being obtained for a permissible purpose set forth in the FCRA, 15 U.S.C. § 1681b. Selection thus routinely violates the permissible purpose limitations of § 1681b and the requirements of § 1681e(a).

11.    Likewise, Vericheck did not have a legal right to access Plaintiff's consumer report. As a prerequisite to obtain Plaintiff's consumer report, Vericheck was required to provide a certification to Selection certifying the purposes for which the information was being sought, and certifying that the information will be used for no other purpose. 15 U.S.C. § 1681b(f)(2). Vericheck well knew that Selection, via Xpedite was operating as a consumer reporting agency by reason of its own service agreement with Selection and Xpedite. Yet, Vericheck never certified to Selection why it was seeking Plaintiff's consumer report and never certified it would be used for no other purpose and, therefore, did not have a permissible purpose to obtain the report in violation of § 1681b(f)(2) and/or § 1681e(e)(2).

12.    Defendants follow these procedures with every report they create, and do this as a matter of their designed practice and course of business. In other words, Defendants created the report about Plaintiff according to their ordinary procedures; the types of errors in Plaintiff's report and the impermissible disclosures were not isolated or individualized.

13.    When the Plaintiff became aware that the Selection was publishing false criminal information about her, she requested disclosure of her consumer file from Selection to review and determine the source of the inaccurate information. Selection thereafter refused to respond to Plaintiff's request, failed to provide her with the source of the inaccurate criminal records, and

failed to provide her with any of the disclosures or other information mandated by 15 U.S.C. § 1681g.

14.    Again, this failure to abide by the FCRA's requirements is entirely by design. Selection did not simply fail to fulfill Plaintiff's requests for her file disclosure, it refuses to do so for all consumers.

## JURISDICTION

15.    This Court has jurisdiction pursuant to 28 U.S.C. § 1331 and 15 U.S.C. § 1681(p).

## PARTIES

16.    The Plaintiff is a natural person residing in the Commonwealth of Pennsylvania, and at all times relevant was a "consumer" as defined by 15 U.S.C. § 1681a(c).

17.    Defendant Selection is a corporation headquartered in Cincinnati, Ohio.

18.    Defendant Vericheck is a Pennsylvania entity headquartered in Aliquippa.

19.    Selection is a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

20.    Vericheck is also a "consumer reporting agency" as defined by 15 U.S.C. § 1681a(f).

21.    Selection is regularly engaged in assembling, evaluating, and publishing information concerning consumers to furnish consumer reports to third parties as defined by 15 U.S.C. § 1681a(d).

22.    Vericheck is also regularly engaged in assembling, evaluating, and publishing information concerning consumers to furnish consumer reports to third parties as defined by 15 U.S.C. § 1681a(d).

23.    Defendants publish such consumer reports to third parties under contract for monetary compensation.

## FACTS

**A.    The FCRA And Defendants' Businesses Generally.**

### The FCRA's Accuracy Component.

24.    The reports that Defendants sell to certain businesses about thousands of consumers each year are "consumer reports" within the meaning of 15 U.S.C. § 1681a(d) because they are used and expected to be used for multiple purposes governed by 15 U.S.C. § 1681b and the criminal record information included within bears on the reputation, personal characteristics, and mode of living of the subjects of the reports.

25.    Discovery will show that Defendants do not go to original sources, like courthouses, to obtain criminal-history information. Instead, they buy such information from a vendor in bulk, and in summary, rather than complete and comprehensive form.

26.    The FCRA therefore applies to these reports, meaning Defendants are required to follow the Act's requirements that they use reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the consumer reports they prepare relates. 15 U.S.C. § 1681e(b).

27.    However, Defendants do not follow such procedures, but instead fail to obtain sufficient data to provide accurate information on the reports they prepare and sell. Defendants thus regularly and illegally include criminal record information on reports which does not pertain to the individual who is the subject of the report.

28.    Defendants also regularly and illegally issues reports containing so little information about the offenses associated with the consumers that the reports cannot be considered accurate under the FCRA.

29.     Defendants' practices and procedures regarding the reporting of criminal record information, including the failure to obtain, use, and report sufficient identifying information and information about the record at issue, cause widespread harm to consumer and to interstate commerce as a whole.

30.     This reality is the result of Defendants' intentional business decisions. The criminal record information Defendants obtains from their vendor(s) is merely a summary which does not include all of the information or the most up to date information available at the courthouses or government offices where the records themselves are housed in conjunction with the functioning of those entities.

31.     Defendants know that its vendor(s) make mistakes in the condensed, summary information that Defendants purchase for background reporting purposes, and that such information routinely does not contain basic personal identifying information such as date of birth, Social Security Number, or middle name, and that such information routinely does not include an accurate description of the charge and/or disposition.

32.     The Consumer Financial Protection Bureau ("CFPB") recognizes such widespread problems, noting in 2015 that consumer reporting agencies did not adequately oversee their public records vendors:

> Examiners found that the oversight of public records providers by one or more CRAs was weak and required corrective action. For example, one or more CRAs had never conducted a formal audit of their public records providers. In addition, one or more CRAs did not have defined processes to verify the accuracy of public record information provided by their public records providers. In light of such weaknesses, Supervision directed one or more CRAs to establish and implement suitable and effective oversight of public records providers.[1]

---

[1]     CFPB, Supervisory Highlights, 2.1.1 (Summer 2015), *available at* http://files.consumerfinance.gov/f/201506_cfpb_supervisory-highlights.pdf (last viewed July 25, 2020).

33. Further, the CFPB expressed concern about the accuracy of public records information that the consumer reporting agencies imported into their consumer databases:

> Examiners reviewed quality control processes with respect to the accuracy of consumer reports produced by one or more CRAs and found that, with certain exceptions, there were no quality control policies and procedures to test compiled consumer reports for accuracy. While processes existed to analyze and improve the quality of incoming data, there was no post-compilation report review or sampling to test the accuracy of consumer reports. In light of these weaknesses, Supervision directed one or more CRAs to develop a plan with implementation timelines to establish quality controls that regularly assess the accuracy and integrity of the consumer reports and consumer file disclosures produced.[2]

34. Companies or persons that purchase Defendants' services rely on the information in Defendants' reports to make eligibility decisions. Many landlords refuse to rent to and employers refuse to hire people who have criminal records like those misattributed to Plaintiff here.

35. Defendants are aware of the detrimental impact that misattributing a criminal record to a prospective tenant or job applicant has on that person's ability to obtain housing or employment.

36. Defendants' publication of inaccurate criminal record information to prospective landlords or employers is defamation *per se* which causes consumers serious and cognizable actual damages. *See* RESTATEMENT (2D) OF TORTS, §§ 570–74 (a statement is defamatory *per se* when it falsely imputes a criminal offense to the plaintiff); *Patel v. Trans Union, LLC*, No. 14-cv-00522-LB, 2016 WL 614191, at *3 (N.D. Cal. Oct. 21, 2016) (recognizing the inherently harmful nature of sharing "erroneous and inherently damning information" in the form of inaccurate criminal records included on tenant screening reports).

---

[2] *Id.* at 2.1.2.

## The FCRA's Confidentiality And Privacy Component

37.      A primary purpose for enactment of the FCRA was to create public standards protecting the privacy and confidentiality of personal information.  Senator Proximire recognized that the Act was necessitated by the lack of standards stating, "What is disturbing is the lack of any public standards to ensure that the information is kept confidential and used only for its intended purpose." 115 Cong. Rec. 2413 (1969). *See also* 114 Cong. Rec. 24,903 (1968) (remarks of Sen. Proxmire).

38.      The FCRA addressed this concern by creating standards limiting the dissemination of personal information in several important respects. The Act limits the dissemination of consumer reports by a consumer reporting agency to certain designated purposes. *See* 15 U.S.C. § 1681b(a) limiting the disclosure of a consumer report where a consumer reporting agency has reason to believe the information will be used for, *inter alia*, credit transactions, employment applications or the underwriting of insurance.

39.      The Act also creates standards by requiring the person requesting a consumer report from a consumer reporting agency to have a permissible purpose and also to provide a certification attesting to the purpose of the report and stating that the report will be used for no other purpose. 15 U.S.C. § 1681b(f)(2).

40.      Likewise, these same duties and responsibilities apply to resellers of consumer reports. 15 U.S.C. § 1681e(e)(2).

41.      The Act further requires consumer reporting agencies to obtain certifications from users certifying the purposes for which the information was being sought, and certifying that the information will be used for no other purpose. 15 U.S.C. § 1681e(b).

42.    Where the consumer reporting agency or the user fails to provide the required certification and then the consumer reporting agency provides a consumer report to the user, the disclosure of that report lacks the requisite permissible purpose, thereby undermining the intended confidentiality and privacy protections of the FCRA.

43.    Defendants uniformly deprive persons of these crucial protections by failing to obtain or require the mandated certifications stating that the consumer reports issued by Selection will be used for specified permissible purposes and will not be used for any other purpose.  Absent these protections, Selection allows users to obtain and use consumer reports for any purpose whatsoever.

**The FCRA's Transparency Component Via File Disclosures.**

44.    Apart from accuracy and confidentiality, transparency is also a bedrock goal of the FCRA.

45.    To that end, Congress enacted 15 U.S.C. § 1681g, which demands that "[e]very consumer reporting agency shall, upon request, and subject to section 1681h(a)(1) of this title, clearly and accurately disclose to the consumer: (1) All information in the consumer's file at the time of the request . . ." and "(2) The sources of the information." 15 U.S.C. § 1681g(a).

46.    This is commonly known as a "file disclosure.  Naturally, placing such information in consumers' hands arms them with the knowledge they need to combat the rampant inaccuracies described above. Knowing what information an agency has, and where the agency obtained it, helps consumers run down every lead so that they can correct inaccuracies and prevent them from recurring.

47.    Defendant Selection here universally deprives consumers of this congressionally mandated information. There is no process by which to provide consumers with their file

disclosures, and not even a form letter sent to consumers indicating that Defendant believes they have nothing to provide or are not bound by the FCRA's requirements.

48.    Consumers request their file disclosures, and are met with silence. The FCRA does not provide for this option.

49.    Such is especially problematic here because Defendant Selection does not obtain public records like criminal history from courthouses or governments. They obtain them from third-party vendors. For a consumer like Plaintiff to correct inaccuracies in her reports, she must not only contact Defendant but those from whom they buy their data. Without her file disclosure, Plaintiff cannot identify these vendors and contact them to correct their records.

50.    Defendant Selection conceals that the identities of its source(s) for criminal record information are private vendors, including other consumer reporting agencies that supply Defendants with incomplete information on a bulk basis.

51.    Defendant is more interested in maintaining the appearance that it obtains actual public records from true government sources and in protecting its low-cost private sources of public record data than in disclosing to consumers vital information that Congress required consumer reporting agencies to disclose in FCRA section 1681g(a)(2).

52.    Defendant Selection fails, as a matter of common policy and procedure, to provide consumers who request file disclosures with all information Defendant maintains about the requesting consumer, including never disclosing to consumers the source of the criminal record information collected and reported about them.

53.    Defendant's practices not only violate the FCRA as a matter of law, the practices exact serious consequences on rental housing and job applicants and interstate commerce. Consumers are prejudiced in their ability to obtain leased housing and are deprived of complete

information regarding the nature and source(s) of the information Defendants maintain and sell about them.

**B.    Plaintiff's Experience With Defendants' Reporting.**

54. Defendant Selection operates as a consumer reporting agency by providing criminal record background checks and other similar consumer reports for the purpose of credit transactions, employment, or housing rentals.

55. Selection gathers and stores personal information about persons for the purpose of providing consumer reports to third party employers, landlords and others.  Such reports include, but are not limited to, criminal history reports, character references, education verification, drug screening, credit histories, property rental histories including eviction histories, and motor vehicle reports.

56. Selection owns and operates what it calls its Search America database which it describes as follows: ". . .THE standard in national criminal database searches.  With over **1 Billion** records, from over **1,500 different sources**, Search America® is an unparalleled location tool to combine with prime sources searches to ensure you have the most complete picture." https://selection.com/national-criminal-database/ (last visited 01/07/2021).

57. Selection also operates a website found online at www.xpedite.com. The website is copyrighted by Selection and states at the bottom of each page: Copyright © 2021 Selection Management Systems, Inc. dba XPEDITE® Wholesale Criminal Research. All rights reserved.

58. Through Xpedite, Selection also sells criminal history record reports to so-called resellers.  As the FAQ section of the Xpedite website explains:

> Who qualifies for XPEDITE®?
>
> Unfortunately, not everyone qualifies for this service. You must be a reseller of criminal records. XPEDITE® does not perform services for retail customers. Our

customers include pre-employment screening companies, information providers, security specialists, government entities, tenant screening services and insurance providers.

59. The Xpedite website also explains what is needed to access its services:

How long does it take before I can order searches?

A completed customer credit application, service agreement, and a MasterCard, Visa, or American Express account number are required to sign up online. Once your account is approved, you will be issued a customer number and password.

60. Selection sells its Search America criminal history reports through the Xpedite website. These reports are assembled from the same database Selection uses to sell Search America reports directly to non-reseller employers, landlords or others.

61. Despite knowing that its Search America reports come from the same database whether such reports are sold as a Selection.com report or an Xpedite.com report, Selection attempts to disclaim that its Xpedite.com business is covered by the FCRA stating as follows:

XPEDITE® Wholesale Criminal Research is not a "Consumer Reporting Agency," and services do not constitute a "Consumer Report" as those terms are defined under the federal Fair Credit Reporting Act, 15. U.S.C. § 1681 et seq. ("FCRA"). Services may not be included, in whole or in part, in any Consumer Report, nor may they be used in any way to establish any consumer's eligibility for employment, certain benefits, or any other Permissible Purpose under the FCRA. XPEDITE® does not provide services directly to employers, landlords, or to any other entity which makes hiring or rental decisions, or any other decision regulated by the FCRA.

https://xpediteonline.com/ (last visited 01/08/2021)

62. This disclaimer is not effective to obviate that Xpedite is actually in fact an arm of the consumer reporting agency business that is Selection. Xpediteonline.com is merely Selection operating under a disguised name, yet still operating the same consumer reporting agency business.

63. On or about December 29, 2015, Vericheck agreed to an Xpedite Agreement For Services pursuant to which it was authorized to access Xpedite's website to order and obtain criminal history record reports.

64. On or about July 2018, the Plaintiff applied to rent a property with Lutheran Senior Life, for herself and her husband, at Luther Court Apartments, a senior living community.

65. The leasing agent requested a tenant screening report from Vericheck.

66. Upon receiving the order from Luther Court, Vericheck, in turn, purchased records, including criminal history, purportedly about Plaintiff from Defendant Selection through the Xpedite website pursuant to its contract with Selection.

67. In obtaining this criminal history report from Selection, Vericheck did not certify to Selection the purpose for requesting the report, nor did Vericheck certify that the report would not be used for any other purpose. Selection, therefore, did not know the purpose of the request and had no reason to believe that the information was being used for a permissible purpose under the FCRA. Indeed, under the "see no evil, hear no evil" Xpediate.com business model used by Selection, Selection sought to avoid knowing the purpose of the request.

68. On or about July 16, 2018 Vericheck obtained a Search America Report from Defendant Selection through the Xpedite website. The Search America report purported to be a criminal history record report about Plaintiff. The report states that the information in the report was derived from the Search America database owned and operated by Selection.

69. In providing this criminal history report to Vericheck, Selection did not obtain a certification from Vericheck stating the purpose for requesting the report, nor did Selection obtain a certification from Vericheck that the report would not be used for any other purpose. Selection, therefore, did not know the purpose of the request and had no reason to believe that the information was being used for a permissible purpose under the FCRA.

70. Vericheck, in turn, reported the information from the Search America report to Luther Court.

71. The criminal records Selection provided to Vericheck, and Vericheck to Luther Court, belonged to a different individual with a different name—Jeannie A. Thomas.

72. The surname Thomas does not appear anywhere in Plaintiff's application materials to Luther Court.

73. The only commonalities between the identifying information of Plaintiff and Ms. Thomas appear to be Plaintiff's first name, Jean, and the first half of Ms. Thomas's name, Jeannie, and the year of their birth. The records supplied to Luther Court list "00" as the month and "00" as the day of Ms. Thomas's birthdate.

74. The best Defendants can say about their matching criteria is that it attributed to Plaintiff the criminal records of Ms. Thomas based on a match of half of the first name and year of birth.

75. Had Selection or Vericheck employed even the most-basic procedures to ensure the maximum possible accuracy of records they report, they would have easily noticed that they were attributing to Plaintiff the criminal records of a stranger.

76. Defendants' failure to pick up on the plain distinctions between Plaintiff and Ms. Thomas was unreasonable.

77. The records Defendants reported about Plaintiff include, but are not necessarily limited to, Georgia criminal records showing Ms. Thomas's history of shoplifting and bail jumping.

78. A search of the Georgia Department of Corrections using the case number on the Vericheck report shows that Ms. Thomas (listed with the surname Haghighat) was scheduled for release from custody April 30, 2019. Ms. Thomas would therefore have been incarcerated in Georgia at the time Vericheck and Selection included her criminal history on the report about Plaintiff who was at the same time applying for housing in Pennsylvania.

79. Ms. Thomas's Georgia Department of Corrections records also included a photograph, which Vericheck or Selection could have compared to Plaintiff's drivers license to confirm whether the records truly belonged to Plaintiff.

80. The Georgia Department of Corrections records also include a lengthy list of Ms. Thomas's aliases, none of which is Jean Wingard.

81. Based upon the Defendants' inaccurate report, Luther Court Apartments rejected the Plaintiff for tenancy.

82. As is her right under the FCRA, in late August 2018, the Plaintiff requested a copy of her consumer file from the Selection. Plaintiff included her name, address, date of birth, last four digits of her Social Security Number, and a check for $13 with that request.

83. Selection did not provide the Plaintiff with a copy of her consumer file.

84. The Plaintiff also requested a hearing with Luther Court to dispute the false records, but even after an in-person hearing, the Plaintiff was unable to convince Luther Court to reverse its decision.

85. In September 2018, the Plaintiff again requested a copy of her consumer file from Selection. She again included all identifying information listed above.

86. To date, Selection has failed to provide any response to Plaintiff's requests for disclosure of her consumer file as mandated by the FCRA.

87. The denial of housing at Luther Court was and continues to be a great detriment to the Plaintiff since she is taking care of her husband, Dewayne Wingard, whose health is in decline.

88. Further, the Plaintiff had been on a waiting list with Luther Court for over two years in order to secure more affordable housing with the option of additional senior in-home services and nursing assistance for herself and her husband.

89. Selection's actions in impermissibly disclosing a report about Plaintiff, in reporting this false and severely derogatory information about her together with its outright refusal to provide her with a copy of her consumer disclosure, caused significant harm to the Plaintiff.

90. For example, the Plaintiff refrained from applying to other rental properties and job opportunities because she was concerned that the criminal misinformation would possibly be reported again, and she would suffer further embarrassment, humiliation, anxiety, stress, and rejection from job and housing opportunities.

91. This misinformation mixed into the Plaintiff's file was due to the Defendants' failure to maintain reasonable procedures to assure the maximum possible accuracy of the information in consumer reports that it sold for profit.

92. Due to the Defendants' lack of reasonable procedures to assure maximum possible accuracy, the derogatory and mismatched criminal history information included in Plaintiff's consumer report significantly limited and negatively impacted her ability to secure housing for herself and her very ill husband.

93. As a result of the Defendants' conduct, actions, and inaction, the Plaintiff suffered actual damages to include, but not limited to, missed rental and economic opportunities, aggravation, inconvenience, embarrassment, stress, anxiety, and frustration.  The Plaintiff also refrained from applying for other rental properties and jobs because of the inaccurate negative reporting by the Defendant.

**Class Action Allegations**

94. Pursuant to Rule 23 of the Federal Rules of Civil Procedure, the Plaintiff brings this action for herself and on behalf of the following defined liability only Mixed File classes:

### The Selection Liability Only Mixed File Class

All natural persons residing in the United States (a) for whom Selection furnished consumer reports, (b) within the two year period preceding the filing of this action and during its pendency, and (c) which reports contained records of criminal history for a person who did not have a matching full name, full date of birth, and street address with the person who was the subject of the report. Excluded from the class definition are any employees, officers, or directors of Selection, any attorney appearing in this case, and any judge assigned to hear this action.

### The Vericheck Liability Only Mixed File Subclass

All natural persons residing in the United States (a) for whom Vericheck furnished consumer reports, (b) within the two year period preceding the filing of this action and during its pendency, and (c) which reports contained records of criminal history for a person who did not have a matching full name, full date of birth, and street address with the person who was the subject of the report. Excluded from the class definition are any employees, officers, or directors of Vericheck, any attorney appearing in this case, and any judge assigned to hear this action.

95. Plaintiff seeks certification of these classes as to liability only. Should certification

succeed, Plaintiff shall seek a separate trial determination of damages for all Class Members.

96. Plaintiff further brings this action for herself and on behalf of the following defined

Impermissible Pull Classes:

### Selection Impermissible Pull Damages Class

All natural persons residing in the United States as to whom (a) a person or entity requested their consumer information from Selection through Xpedite, (b) within the two year period preceding the filing of this action and during its pendency, and (c) as to whom Selection failed to obtain a certification from the person or entity stating the purpose for requesting the consumer information and stating that the consumer information would not be used for any other purpose. Excluded from the class definition are any employees, officers, or directors of Selection, any attorney appearing in this case, and any judge assigned to hear this action.

### Vericheck Impermissible Pull Damages Class

All natural persons residing in the United States as to whom (a) Vericheck requested consumer information from Selection through Xpedite, (b) within the two year period preceding the filing of this action and during its pendency, and (c) as to whom Vericheck failed to provide a certification from the person or entity stating the purpose for requesting the consumer information and stating that the consumer

information would not be used for any other purpose. Excluded from the class definition are any employees, officers, or directors of Selection, any attorney appearing in this case, and any judge assigned to hear this action.

97. Plaintiff further brings this action for herself and on behalf of the following defined

File Disclosure Class:

### Selection File Disclosure Class

All natural persons residing in the United States (a) who requested their consumer information from Selection, (b) within the two year period preceding the filing of this action and during its pendency, and (c) to whom Selection failed to provide a consumer disclosure or a response that included the source(s) of the criminal record information maintained by Selection. Excluded from the class definition are any employees, officers, or directors of Selection, any attorney appearing in this case, and any judge assigned to hear this action.

### Federal Rule of Civil Procedure 23(a)

### *Numerosity*

98. The Plaintiff incorporates her prior allegations and estimates that the Classes and

Subclass are so numerous that joinder of all members is impractical. Discovery will show the

Classes and Subclass exceed 100 consumers, and those consumers are sufficiently geographically

disbursed as to make joinder impracticable.

99. The exact number and identity of these persons is not known, but can be determined

from the records maintained by Defendants. In many instances, Class Members are either unaware

that claims exist or have sustained individual damages too small to justify the costs of bringing

suit separately. Since Defendants employed uniform, failed systems across all reports they

furnished, their conduct justifies this Class Action.

### *Commonality*

100.    The questions of law and fact common to the claims of each Class Member

overwhelmingly predominate over any question of law or fact affecting only individual members

of the Class. Questions of law and fact common to the Selection Classes and Vericheck subclasses include, but are not necessarily limited to, the following:

   a.  Whether Defendants employed reasonable procedures designed to assure the maximum possible accuracy of the information they reported;

   b.  Whether Defendant Selection issued consumer reports without a reason to believe there was a permissible purpose;

   c.  Whether Defendant issued a consumer report without obtaining the required certifications from users of the consumer reports;

   d.  Whether Defendant Vericheck obtained consumer reports without the required certifications;

   e.  Whether Defendants' practices were uniformly applied across all reports they issued;

   f.  Whether Defendants' practice of failing to follow reasonable procedures constitutes violations of 15 U.S.C. § 1681e(b);

   g.  Whether Defendants acted negligently or willfully.

101.    The questions of law and fact common to the claims of each Selection File Disclosure Class member overwhelmingly predominate over any question of law or fact affecting only individual members of the Class.  Questions of law and fact common to the Class include, but are not necessarily limited to, the following:

   a.  Whether Selection failed to provide consumers with clear, accurate, and complete disclosures of the information in their file when requested;

   b.  Whether Selection's practice of failing to provide File Disclosures constitutes violations of 15 U.S.C. § 1681g(a);

    c.   Whether Selection acted willfully;

    d.   Whether Plaintiffs and Class Members are entitled to statutory damages; and

    e.   Whether Plaintiffs and Class Members are entitled to punitive damages.

### *Typicality*

102.    The claim of Plaintiff is typical of the claims of the Classes and Subclass she seeks to represent because at all times material to the allegations of this Class Action Complaint, Plaintiff and the members of the Classes and Subclass she seeks to represent were subject to the same policies, practices, and procedures and seek only a finding of liability as relief.

103.    Plaintiff and the Classes and Subclass she seeks to represent have sustained similar types of harm, and the members of the Classes and Subclass have claims that arise from an identical factual background and identical legal theories as do Plaintiff's.

104.    The Plaintiff's claim is typical of those of the Selection Class and Vericheck Subclass—Defendants issued inaccurate reports about them because Defendants, as a matter of practice, failed to employ reasonable procedures designed to ensure the maximum possible accuracy of the information Defendants included in reports they published about Plaintiff and Class Members.

105.    The claims of Plaintiff are typical of the claims of the Selection Damages Class she seeks to represent because at all times material to the allegations of this Class Action Complaint, Plaintiff and the members of the Class she seeks to represent were subject to the same policies, practices, and procedures and seek the same kind of relief.

106.    Plaintiffs and the Class she seeks to represent have sustained similar types of damages, and the members of the Selection Damages Class have claims that arise from an identical factual background and identical legal theories.

107.     The Plaintiff's claim is typical of those of the Selection Damages Class—Selection failed to identify the source of the public records that it published about them.

### *Adequacy of Representation*

108.     The Plaintiff will fairly and adequately protect the interests of the Classes and Subclass. The Plaintiff has retained Counsel experienced in handling FCRA class actions. Neither the Plaintiff nor her Counsel has any interests that might cause them not to vigorously pursue this action. The Plaintiff is aware of her responsibilities to the putative Class and Subclass and has accepted such responsibilities.

### Federal Rule of Civil Procedure 23(b)

109.     Certification of the classes under Rule 23(b)(1) of the Federal Rules of Civil Procedure is proper.  Prosecuting separate actions would create a risk of adjudications that would be dispositive of the interests of the other members who are not parties to the individual adjudications or would substantially impair their ability to protect their interests.

110.     Certification of the classes under Rule 23(b)(2) of the Federal Rules of Civil Procedure is appropriate in that the Defendants acted on grounds generally applicable to the class, thereby making appropriate declaratory relief—in the form of a finding of classwide liability—with respect to the class as a whole.

111.     Certification of the classes under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that:

        a.     As alleged above, the questions of law or fact common to the members of the Classes and Subclass predominate over any questions affecting an individual member. Each of the common facts and legal questions in the case overwhelms the more modest individual damages issues. Further, those individual issues that do exist can be effectively

streamlined and resolved in a manner that minimizes the individual complexities and differences of proof in the case.

b.      A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Consumer claims are generally ideal for class treatment as they involve many, if not most, consumers who are otherwise disempowered and unable to afford to bring such claims individually.   Further, most consumers affected by the Defendant's FCRA violation would likely be unaware of their rights under the law, or who they could find to represent them in federal litigation. Additionally, individual litigation of the uniform issues, in this case, would be a waste of judicial resources.  The issues at the core of this case are classwide and should be resolved at one time.  A win for one consumer would set the law for every similarly situated consumer.

### COUNT ONE: Class Liability Mixed File Claim
### Violation of 15 U.S.C. § 1681e(b) Against Both Defendants

112.    The Plaintiff restates each of the allegations in the preceding paragraphs 1 through 110 as if set forth at length herein.

113.    The Defendants violated 15 U.S.C. § 1681e(b) by failing to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates. These failures were repeated and by design; Plaintiff's inaccurate report was not a one-off, isolated failure to properly match criminal records.

114.    The Defendants' violations were willful, pursuant to 15 U.S.C. § 1681n, or, in the alternative, negligent entitling the Plaintiff and putative class members to recover under 15 U.S.C. § 1681o should liability be established.

115.    As a result of the Defendants' violations, the Plaintiff and the putative Selection Class and Vericheck Subclass members suffered harm and are entitled to recover actual damages, statutory damages, punitive damages, costs, and attorneys' fees.

116.    The Defendants' conduct, actions, and inaction were willful, rendering them liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. In the alternative, the Defendants were negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

117.    The Plaintiff, the Class, and Subclass are entitled to recover actual damages, punitive damages, costs, and attorneys' fees from the Defendants in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and 15 U.S.C. § 1681o.

### COUNT TWO: Class Impermissible Purpose Claim
### Violation of 15 U.S.C. § 1681b and 1681e(a) Against Selection

118.    The Plaintiff restates each of the allegations in the preceding paragraphs 1 through 110 as if set forth at length herein.

119.    Defendant Selection violated 15 U.S.C. § 1681b and § 1681e(a) by disclosing a consumer report without a reason to believe that the report would be used for a permissible purpose and by failing to obtain a certification that identified the purpose for requesting the report and that the report would not be used for any other purpose. These failures were repeated and by design.

120.    The Defendant's violations were willful, pursuant to 15 U.S.C. § 1681n, or, in the alternative, negligent entitling the Plaintiff and putative class members to recover under 15 U.S.C. § 1681o should liability be established.

121.    As a result of the Defendants' violations, the Plaintiff and the putative Selection Class members suffered harm and are entitled to recover actual damages, statutory damages, punitive damages, costs, and attorneys' fees.

122.    The Defendant's conduct, actions, and inaction were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  In the alternative, the Defendant was negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

123.    The Plaintiff, the Class, and Subclass are entitled to recover actual damages, punitive damages, costs, and attorneys' fees from the Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and 15 U.S.C. § 1681o.

**COUNT THREE:  Class Impermissible Purpose Claim**
**Violation of 15 U.S.C. § 1681b(f) and/or § 1681e(e)(2) By Vericheck**

124.    The Plaintiff restates each of the allegations in the preceding paragraphs 1 through 110 as if set forth at length herein.

125.    The Defendant Vericheck violated 15 U.S.C. § 1681b(f) and/or § 1681e(e)(2)  by obtaining a consumer report without certifying the purpose for requesting the report and that the report would not be used for any other purpose. These failures were repeated.

126.    The Defendant's violations were willful, pursuant to 15 U.S.C. § 1681n, or, in the alternative, negligent entitling the Plaintiff and putative class members to recover under 15 U.S.C. § 1681o should liability be established.

127.    As a result of the Defendant's violations, the Plaintiff and the putative Selection Class members suffered harm and are entitled to recover actual damages, statutory damages, punitive damages, costs, and attorneys' fees.

128.    The Defendant's conduct, actions, and inaction were willful, rendering it liable for punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n.  In the alternative, the Defendant was negligent, entitling the Plaintiff to recover under 15 U.S.C. § 1681o.

129.    The Plaintiff, the Class, and Subclass are entitled to recover actual damages, punitive damages, costs, and attorneys' fees from the Defendant in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n and 15 U.S.C. § 1681o.

## COUNT FOUR: File Disclosure Class
## Violation of 15 U.S.C. § 1681b(f) By Selection

130.    The Plaintiff restates each of the allegations in the preceding paragraphs 1 through 69 as if set forth at length herein.

131.    Defendant Selection failed to provide Plaintiff any response to her written request for a copy of her consumer file, failed to disclose the source of the judgment information contained in her consumer report, and failed to identify each person that procured the Plaintiff's report during the preceding 1-year period, thereby violating 15 U.S.C. § 1681g.

132.    Selection's violations were willful, pursuant to 15 U.S.C. § 1681n, or, in the alternative, negligent entitling the Plaintiff and putative class members to recover under 15 U.S.C. § 1681o.

133.    As a result of Selection's violations, the Plaintiff and the putative Class Members suffered damages and are entitled to recover statutory damages, punitive damages, costs, and attorneys' fees. 15 U.S.C. §§ 1681n, o.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiff requests that this Court certify the Liability Class for litigation of Defendants' violations of 15 U.S.C. § 1681e(b); award attorneys' fees and costs to the Liability Class; certify the Damages Class for Litigation of Selection's violations of 15 U.S.C. § 1681g; award actual damages; punitive damages; statutory damages, attorneys' fees, and costs to the Damages Class; and further impose injunctive relief in the form of an Order requiring Selection to provide the consumer file, including the source of the criminal record information to each putative

Damages Class Member that historically requested their disclosure and to continue to provide this information to any individuals that request their disclosure from the Defendant in the future; and any further relief this Court deems just.

**The Plaintiff and putative class members demand a trial by jury.**

Dated:  January 15, 2021                    Respectfully submitted,

                                            Feinstein Doyle Payne & Kravec, LLC

                                            By:    /s/ James M. Pietz
                                            James M. Pietz, Esquire (PA #55406)
                                            429 Fourth Avenue
                                            Law and Finance Building, Suite 1300
                                            Pittsburgh, PA 15219
                                            Tel: 412-281-8400
                                            Email:  jpietz@fdpklaw.com

                                            Leonard A. Bennett, Esquire
                                            *(pro hac vice)*
                                            Craig Marchiando, Esquire
                                            (*pro hac vice*)
                                            Consumer Litigation Associates, P.C.
                                            763 J. Clyde Morris Blvd., Ste. 1-A
                                            Newport News, VA  23601
                                            757-930-3660
                                            Email:  lenbennett@clalegal.com

                                            *Counsel for the Representative and Class Plaintiffs*